UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY ALTSON
and LEEMESHIA SULLIVAN,

              Plaintiffs,

v.

LOANCARE, DITECH FINANCIAL LLC
F/K/A GREENTREE SERVICING LLC,
FIRST EQUITY FUNDING, and HP
FORECLOSURE SOLUTIONS LLC,

              Defendants.
_____/

Case No. 2:23-cv-12704
District Judge Nancy G. Edmunds
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S
MOTION TO DISMISS AND MOTION FOR PARTIAL SUMMARY
JUDGMENT (ECF No. 15)**

**I.    RECOMMENDATION**:  For the reasons set forth in greater detail below,

the Court should:  **GRANT** Defendant LoanCare's motion to dismiss and motion

for partial summary judgment (ECF No. 15). The Court should further issue an

order to show cause why the operative pleading should not be dismissed against all

defendants.

**II.    REPORT:**

    **A.    Background**

        On October 25, 2023, Plaintiffs Anthony Altson and Leemeshia Sullivan,

proceeding *in pro per*, initiated this action.  On December 1, 2023, they amended

their complaint as of right.  *See* Fed. R. Civ. P. 15(a)(1)(A) (allowing amendment

as a matter of course no later than 21 days after service of the complaint).  The

December 1, 2023 amended complaint is the operative pleading.  (ECF No. 6.)[1]

On December 12, 2023, Judge Edmunds referred this case to me "for

all pretrial proceedings, including a hearing and determination of all

non−dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(A) and/or a report and

recommendation on all dispositive matters pursuant to 28 U.S.C. § 636(b)(1)(B)."

(ECF No. 9.)

Plaintiffs bring this action to quiet title to the property located at 21333

Dartmouth, Southfield, Michigan, 48076.  (ECF No. 6, PageID.59.)  The amended

complaint alleges that on October 29, 2003, Plaintiff Anthony Alston and Cheryl

Alston[2] executed a note (the "Note") when obtaining a mortgage from Defendant

First Equity Funding.  (ECF No. 6, PageID.61.)  Plaintiffs assert that Defendant

---

[1] Both parties appear to agree that the amended complaint is the operative pleading, and both parties reference exhibits attached to the amended complaint.  No exhibits appear on the electronic docket entry associated with the amended complaint (ECF No. 6), but the exhibit numbers do largely correspond to those associated with the original complaint.  The Court assumes that Plaintiffs sent the exhibits to Defendant, but neglected to send another copy of them to the Court when amending their pleading.  The Court will refer to the exhibits attached to the original complaint as necessary.  There does not appear to be any relevant factual dispute regarding any content in the exhibits.

[2] On September 17, 2020, Anthony Alston executed a Quit Claim Deed in favor of Plaintiff LeeMeish Sullivan.  (ECF No. 6, PageID.62.)

First Equity Funding "caused alterations to be made to the original note and/or caused forgery of the original instrument" through its alleged "misapplication of an allonge[3] and/or its failure to indorse the front or back of the Note although there was plenty of space on the front and back of the instrument or note." (ECF No. 6, PageID.61 (word case alterations for readability).)

Plaintiffs allege that on the same day, Defendant First Equity Funding used an allonge "to negotiate the Note by transfer and/or blank indorsement to Countrywide" and that "Countrywide thereafter indorsed the note in blank, establishing Countrywide intentions to transfer the Note elsewhere." (*Id.*) Plaintiffs state that from October 29, 2003 until March 14, 2023, the date of the foreclosure sale on the property, "Defendant First Equity Funding via LoanCare and others, fraudulently sought payment from Plaintiffs towards the un-indorsed, altered, and forged note." (*Id.*) According to Plaintiffs, they have somehow been discharged from any performance obligations under the Note or Mortgage because of the alleged alterations and/or forgery. (*Id.*)

On February 26, 2020, Defendant LoanCare received an assignment of mortgage from Defendant Ditech Financial LLC F/K/A Green Tree Servicing LL (sometimes known as Green Tree Servicing LLC by Loan Care). (ECF No. 6,

---

[3] An allonge is a "slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." *Black's Law Dictionary* (12th ed. 2024).

PageID.62.)  On December 10, 2022, Plaintiff Alston sent LoanCare a Notice of

Dispute and Request for validation, which Plaintiffs claim went unanswered.  (ECF

No. 6, PageID.62.)  On March 14, 2023, a foreclosure sale of the property was

held, and Defendant HP Foreclosure Solutions purchased the property for

$169,988.  (*Id.*)

Plaintiffs' operative pleading asserts eight counts against Defendants:

- Count I:  Quiet Title Action, in which Plaintiffs allege that due to the alleged actions of First Equity Funding on October 29, 2003, Plaintiffs obligations under the Note and Mortgage were discharged and no Defendants can establish the chain of title requirements required prior to foreclosure, Plaintiffs allege that Plaintiff Altson transferred clear title to Plaintiff Sullivan. (ECF No. 6, PageID.62-64.)

- Count II:  Violation of UCC § 3-407, in which Plaintiffs claim that First Equity's use of an allonge constituted an unauthorized and improper alteration of the Note and mortgage, thereby discharging Plaintiff Altson from performance under the Note and Mortgage. (ECF No. 6, PageID.64-68.)

- Count III: Conversion of Instrument under UCC § 3-420(a), in which Plaintiffs argue that the initial assignment to Countrywide was improper and thereby all subsequent transfers and attempts to enforce the Note were also improper and constituted conversion of the instrument of the Note. (ECF No. 6, PageID.68-69.)

- Count IV: Civil Conspiracy, in which Plaintiffs allege that Defendants conspired to "defraud Plaintiff out of money and property under the false premise that the Note and Mortgage [were] enforceable and properly indorsed." (ECF No. 6, PageID.70-72.)

- Count V:  Violation of MCL 600.3204, in which Plaintiffs allege that Defendants did not validly perfect or assign their interests in the Note,

because of the allegedly improperly indorsement.  (ECF No. 6, PageID.72-74)

- Count VI: Violation of the Fair Debt Collection Practices Act, in which Plaintiffs allege that Defendant LoanCare violated the FDCPA by maintaining a foreclosure action in violation of Michigan foreclosure by advertisement provisions, relying on an improperly indorsed Note, failing to perfect a clear chain of title prior to foreclosure, and failure to answer Plaintiff's validation request.  (ECF No. 6, PageID.74-76.)

- Count VII: Slander of Title, based on Defendant LoanCare recording a sheriff's deed that was allegedly based on unlawful foreclosure proceedings because "all prerequisites were not fulfilled" (presumably based on the allegedly improper indorsement.  (ECF No. 6, PageID.76-77.)

- Count VIII: Violation of UCC § 3-406, alleging Defendants failure to exercise ordinary care and contributed to the alteration of an instrument or to the making of a forged signature on an instrument.  (ECF No. 6, PageID.77-78.)

Defendant LoanCare brings a motion to dismiss and motion for partial summary judgment. (ECF No. 15.)  Defendant argues that all of Plaintiffs' claims rely on the misguided premise that Defendant First Equity used an invalid allonge to indorse the Note to Countrywide on October 29, 2003, and that all of the subsequent transfers of the Note were therefore invalid.  Defendant argues that Plaintiffs' argument fails under Michigan law and the amended complaint must therefore be dismissed.  The Court should agree and **GRANT** the motion.

5

**B.      Standard**

**1.  Rule 12(b)(6)**

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").  Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520

6

(1972).  However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'"  *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)).  Moreover, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him.  Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.).[4]

## 2.  Rule 56

Defendant also moves for summary judgment under Fed. R. Civ. P. 56(a). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact."  Fed. R. Civ. P. 56(c); see E.*E.O.C. v. Sharp Mfg. Co. of Am., Div. of Sharp Elecs. Corp*., 534 F. Supp. 2d 797 (W.D. Tenn. 2008).  "A genuine issue of material fact exists if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  The moving party first

---

[4] *See also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) (Cohn, J.) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

carries the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When evaluating a motion for summary judgment, the Court must look at all the facts and evidence in a light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). However, Fed. R. Civ. P. 56(e) clarifies that a "nonmoving party may not simply rest on his pleadings but, rather, must present some 'specific facts showing that there is a genuine issue for trial.'" *E.E.O.C.*, 534 F. Supp. 2d at 800; (quoting *Celotex*, 477 U.S. at 324). Then, the judge must draw reasonable inferences in the nonmovant's favor and decide "whether the evidence presents a sufficient disagreement to require submission to a jury." *Anderson*, 477 U.S. at 251-52.

To survive a summary judgment motion, the nonmovant must present enough evidence "to allow a reasonable juror to conclude that the [nonmovant's] position more likely than not is true." *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579, 596 (1993). If the nonmoving party fails to respond to the motion for summary judgment with sufficient evidence to establish essential elements of its case, then the Court may grant summary judgment. *Celotex*, 477 U.S. at 322.

The fact that Plaintiffs are *pro se* does not lessen their obligations under Rule 56. Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law." *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338,

344 (6th Cir. 2006). In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'" *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)). The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion." *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a pro se plaintiff because he "failed to present any evidence to defeat the government's motion").

### C. Analysis

#### 1. Attachment of an Allonge

In its opening brief, Defendant argues, and the Court should agree, that the gravamen of Plaintiffs' complaint, and the theory on which all counts rely, is that "Defendant First Equity's use of an allonge to transfer the Note to Countrywide was invalid, therefore invalidating the Note and all subsequent transfers of the Note entirely." (ECF No. 16, PageID.121.) Specifically, although Plaintiffs' operative pleading alleges that the indorsement was invalid due to fraud or

alteration, the crux of the allegations rely on the use of an improper allonge.  As
Defendant argues, "Plaintiffs have failed to make any specific allegations of fraud
or forgery to support their claims, other than Defendant First Equity's use of an
allonge to transfer its interests to Countrywide."  (ECF No. 16, PageID.124.)
Under the Federal Rules of Civil Procedure, fraud must be pled with particularity,
which Plaintiffs have failed to do.  *See* Fed. R. Civ. P. 9(b)("In alleging fraud or
mistake, a party must state with particularity the circumstances constituting fraud
or mistake.").  In any event, Plaintiffs' overriding theory is that an allonge cannot
be used on a separate piece of paper if there is sufficient space remaining on the
original document.  (*See* ECF No. 6.)

However, as Defendant points out, Plaintiffs' theory, as expressed in their
operative pleading, is based on outdated cases from nonbinding jurisdictions.  (*See*,
e.g., ECF No. 6, PageID.66, citing 40-50 year old cases from Texas, California,
Georgia, etc.)  In Michigan, however, the so called "majority rule is not followed."
Instead, indorsement is governed by Mich. Comp. Laws § 440.3204, which states
that "[f]or the purpose of determining whether a signature is made on an
instrument, a paper affixed to the instrument is a part of the instrument."  Mich.
Comp. Laws § 440.3204(1).  As this Court has noted before, "[t]he commentary to
that section explains, '[a]n indorsement on an allonge is valid even though there is
sufficient space on the instrument for an indorsement.'"  *Livonia Prop. Holdings,*

*L.L.C. v. 12840-12976 Farmington Rd. Holdings, L.L.C.*, 717 F. Supp. 2d 724, 734
(E.D. Mich. 2010) (Feikens, J.), *aff'd sub nom. Livonia Properties Holdings, LLC
v. 12840-12976 Farmington Rd. Holdings, LLC*, 399 F. App'x 97 (6th Cir. 2010).
"Thus, regardless of any purported majority rule, an Allonge affixed to a Note
effectively negotiates the instrument without regard to space remaining on the
original instrument." *Id.; see also Thompson v. Bank of Am., N.A.,* 773 F.3d 741,
747 n.1. (6th Cir. 2014) ("Under UCC § 3–3–204(a) & cmt., an allonge 'is part of
the instrument,' and is valid even if the instrument has enough space to hold
additional endorsements."). Thus, any reliance on the "majority rule" is
inapplicable in Michigan where an allonge on a separate piece of paper is valid as a
matter of law.

Because Plaintiffs' theory regarding an improper allonge is the backbone of
every Count in the operative pleading, and because Plaintiffs' reliance on the
"majority rule" fails as a matter of law, the Court should **GRANT** Defendant's
motion to dismiss.[5]

---

[5] Defendant also argues that Count VIII, must also be dismissed for failure to state
a claim. Count VIII alleges that Defendants failed to exercise ordinary care and
contributed to the alteration of an instrument or to the making of a forged signature
on an instrument in violation of UCC § 3-406. Mich. Comp. Laws § 3-406,
however, applies to give to protection to a banks or entities who "in good faith,
pays the instrument or takes it for value or for collection," by precluding persons
whose failure to exercise ordinary care from asserting an action against that bank
or entity. Mich. Comp. Laws § 3-406(1). This provision does not apply to the
situation alleged in Plaintiffs' operative pleading, as no one is alleging Plaintiffs

## 2.  Response brief argument

Although Plaintiffs' operative pleading clearly relied on the improper allonge theory, and although Defendant's motion to dismiss set forth the reasons why that theory fails to state a claim, Plaintiffs do not directly address Defendant's argument in their response and instead set forth a new theory for relief.  Under Plaintiffs' new but unpleaded theory, the allonge and the indorsement are invalid because the assignment was not publicly recorded.  (ECF No. 20, PageID.214, 210.)  Plaintiffs appear to be arguing that because the assignment was not recorded, the chain of title is defective and all subsequent transfers were invalid.  (ECF No. 20, PageId.210.)  Plaintiffs argue that because "there is no chain of title of the note showing who the note was transferred to after Countrywide indorsed the note in blank, LoanCare cannot enjoy the status of holder in due course prior to Foreclosure."  (ECF No. 20, PageID.215.)  This argument, too, fails because Michigan law specifically allows that "[w]hen endorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially endorsed."  Mich. Comp. Laws § 440.3205(2).  The Michigan Supreme Court has held that "[o]nly the record holder of the mortgage has the

---

failed to exercise ordinary care and, in any event, would apply only to preclude an action by Plaintiff, perhaps as an affirmative defense.  Thus, Count VIII should also be dismissed for failure to state a claim.

power to foreclose; the validity of the foreclosure is not affected by any unrecorded assignment of interest held for security." *Residential Funding Co. v. Saurman*, 805 N.W.2d 183, 184 (Mich. 2011) (*quoting Arnold v. DMR Financial*, 448 Mich. 671, 678, 532 N.W.2d 852 (Mich. 1995)).  Indeed, in *Livonia Prop. Holdings*, Judge Feikens relied on well-established Michigan law to note that "'[s]light and inconsequential irregularities'—including the failure to record [a] short-term interim assignment—[do] not invalidate the foreclosure by advertisement." *Livonia Prop. Holdings, L.L.C.*, 717 F. Supp. 2d at 735 (citing *Peterson v. Jacobs*, 6 N.W.2d 533 (Mich. 1942)).

Moreover, as this Court has held, "Plaintiff, as a mortgagor subject to foreclosure by advertisement, certainly has standing to challenge whether Defendant has complied with the statutory requirements for that foreclosure. *But it does not have standing to go beyond the statutory requirements to inspect each and every aspect of every contract or agreement between any predecessor and successor mortgagee, searching for 'irregularities' and noncompliance*."  *Id.* at 743 (emphasis added).  Plaintiffs' new theory of relief, which is arguably not even found within their operative pleading, attempts to search for inconsequential irregularities in contractual assignments to which they are not a party, which in any event do not affect the validity of the foreclosure by advertisement.  As such,

13

Plaintiffs' response brief does not avoid the arguments set forth in Defendant's motion to dismiss.

### 3.   FDCPA Claim

In Plaintiffs' FDCPA claim, Plaintiffs allege violations related to the allegedly invalid allonge and defects in the chain of title; both theories should be rejected by the Court for the reasons discussed above.  Additionally, Plaintiffs allege that, "On December 10, 2022, Plaintiff Anthony Alston sent LoanCare a Notice of Dispute and Request for validation which went unanswered by LoanCare."  (ECF No. 6, PageID.75.)

The FDCPA is codified at 15 U.S.C. §§ 1692-1692p.  In pertinent part, this statute provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g.

Attached to the original complaint (but not the amended complaint) are two notices of dispute and requests for validation: one sent to LoanCare, LLC, P.O. Box 202049, Florence SC 29502-2049, and one sent to Quintairos, Prieto, Wood &

Boyer, 255 South Orange Ave., Suite 900, Orlando, Florida 32801.  (ECF No. 1, PageID.41-44.)  In Defendant's motion to dismiss and for partial summary judgment, it attaches a copy of one of Plaintiffs' monthly billing statements, which includes all the relevant contact information for LoanCare.[6]  (ECF No. 16-6., PageID.187.)  The address listed for Customer Service Inquiries and Notices of Error/Information Requests is P.O. Box 8068, Virginia Beach, Virginia, *not* either of the two addresses where Plaintiffs sent their notices of dispute.  Indeed, the Florence address where Plaintiffs sent their letter is listed in the monthly billing statement as the Insurance Center.  (*Id.*)  In Plaintiffs' response, they do not dispute that they sent their notices to the Insurance Center or to the Orlando address (which they claim is LoanCare's attorney address).  Nor do they dispute that the address listed for Notices of Error is the Virginia Beach address.  Instead, Plaintiffs simply argue that their letters were not returned to them so LoanCare must have received them.  (ECF No.20, PageID.224.)

The Court should find this is insufficient to withstand summary judgment.  Under the FDCPA, "[a] debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error

---

[6] Because Defendant relies on an attachment outside the pleadings in support of this argument, the Court will analyze this claim under Rule 56.  *See* Fed. R. Civ. P. 12(d).

notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C.A. § 1692k(c).  There is no factual dispute that Defendant provided an address to direct such notices of dispute and requests for validation under the FDCPA, and there is no dispute that Plaintiffs sent their notices to the wrong division.  Under these facts, a reasonable jury could only find that any violation "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  Providing an address to which to direct such inquiries, and then not responding when the Plaintiffs undisputedly sent the inquiries to the wrong address, cannot sustain an FDCPA claim as a matter of law.  The Court should grant summary judgment to Defendant on this claim.

### D.     Conclusion

For all of the reasons stated above, the Court should **GRANT** Defendant's motion to dismiss and for partial summary judgment.  (ECF No. 15.)  Specifically, the Court should **GRANT** summary judgment on Plaintiffs' FDCPA claim against LoanCare and dismiss the remaining claims against LoanCare for failure to state a claim.  Additionally, the operative pleading should likely be dismissed against the remaining, unserved defendants, as it is similarly based on unsustainable legal theories.  Thus, if the Court accepts my recommendation, I further recommend that

the Court issue an order requiring Plaintiffs to show cause why the operative

pleading (ECF No. 6) should not be dismissed in its entirety against all defendants.

## III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but they are required to file any objections within 14 days of

service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).

Failure to file specific objections constitutes a waiver of any further right of

appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human

Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but

fail to raise others with specificity will not preserve all the objections a party might

have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human

Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers

Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated:  August 15, 2024

_____
Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE